UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAL OLENIACZ,

                                Plaintiff,                  9:20-cv-01608
                                                                    (AMN/DJS)

v.

ERIC M. WEST, RICCI NATALI,
ADAM J. CARR, MATTHEW C. ROGERS,
NATHAN D. SLATE, RAY L. ROBERTS,
BEN P. KIECHLE, and COREY J. HENDRICK

                                Defendants.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**ILASZ & ASSOCIATES**                 **PATRICIA LYNN DESALVO,**
1 Maiden Lane, 9th Floor              **ESQ.**
New York, NY 10038
Attorneys for Plaintiff

**ATTORNEY GENERAL FOR THE**    **LAUREN R. EVERSLEY, ESQ.**
**STATE OF NEW YORK**                **KOSTAS D. LERIS, ESQ.**
The Capitol                                   Assistant Attorneys General
Albany, NY 12224
Attorneys for Defendants

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

      **I.**        **INTRODUCTION**

On December 14, 2020 then-*pro se* Plaintiff Michal Oleniacz ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS") at Gouverneur Correctional Facility ("Gouverneur").[1]  Dkt. No. 2.[2] Plaintiff alleges that Lieutenant Matthew C. Rogers (individually, "Defendant Rogers"), Sergeant Eric M. West, Correction Officers Ricci Natali, Adam J. Carr, Nathan D. Slate, Ray L. Roberts, Ben P. Kiechle, and Corey J. Hendrick (collectively, "Defendants") violated his Eighth Amendment rights on December 2, 2018, when they forcibly removed him from his cell within Gouverneur's Special Housing Unit (the "SHU cell")—where he had been placed on "suicide watch"—relocated him to another cell (the "holding cell"), and then forcibly restrained him within the holding cell before eventually transporting him to a nearby hospital for evaluation.  Dkt. No. 15 at 2-5; Dkt. No. 15-2 at 108-09, 157-58.

Presently before the Court is Defendant Rogers' individual motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dkt. Nos. 64-65 (the "Motion").[3]  For the reasons set forth below, the Court grants the Motion.

## II.     BACKGROUND

Plaintiff's claims against Defendants stem from an incident that occurred on December 2, 2018, while Plaintiff was incarcerated at Gouverneur.  Dkt. No. 64-7 at ¶¶ 1-2, 18; Dkt. No. 73 at ¶¶ 1-2, 18.  At the time, Defendant Rogers was the Watch Commander at Gouverneur and his duties as Watch Commander included "supervising correction staff . . . and monitoring the wellbeing of all incarcerated individuals and DOCCS staff members."  Dkt. No. 64-4 at ¶¶ 4-5.

---

[1] Plaintiff amended his *pro se* complaint on February 11, 2021, and filed a second amended complaint on April 26, 2021.  Dkt. Nos. 11, 15.  The second amended complaint and its exhibits are the operative pleading in this case ("Complaint").  Plaintiff subsequently retained counsel.  *See* Dkt. Nos. 39, 57.  On October 11, 2023, one of Plaintiff's attorneys informed the Court of the unexpected death of Plaintiff's other attorney.  *See* Dkt. No. 70.

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[3] This case was reassigned to the undersigned on January 19, 2023.  Dkt. No. 55.

Beginning in late November 2018, Plaintiff alleges that he "couldn't eat or sleep for about a week" due to lack of mental health treatment by DOCCS. Dkt. No. 15-2 at 108. On December 1, 2018, New York State Office of Mental Health staff placed Plaintiff on one-to-one "suicide watch" in the SHU cell.[4] Dkt. No. 64-7 at ¶ 11. On the evening of December 2, 2018, Plaintiff began "freaking out" in his SHU cell because he was "hearing voices" in his head and "felt like they were controlling [his] mind and body." Dkt. No. 64-7 at ¶ 20; Dkt. No. 15-2 at 108.

In response to these voices, at approximately 7:40 p.m., Plaintiff took the mattress from his bed and placed it in front of the cell door, blocking the view into his cell. Dkt. No. 64-7 at ¶ 21; Dkt. No. 73 at ¶ 21; Dkt. No. 15-2 at 38. Defendant Natali, who was the officer assigned to the one-to-one suicide watch of Plaintiff, directed Plaintiff to remove the mattress from his cell window. Dkt. No. 64-7 at ¶¶ 19, 23; Dkt. No. 73 at ¶¶ 19, 23. Plaintiff refused. Dkt. No. 64-7 at ¶ 24; Dkt. No. 73 at ¶ 24. Plaintiff was also either banging his head on the wall or punching the mattress. Dkt. No. 64-6 at 8; Dkt. No. 64-2 at 44:2-4. Shortly thereafter, Defendants West, Carr, Slate, Roberts, Kiechle, and Hendrick responded to Plaintiff's SHU sell and Defendant West again directed Plaintiff to remove the mattress. Dkt. No. 64-7 at ¶¶ 26-27; Dkt. No. 73 at ¶¶ 26-27. Plaintiff again refused and the responding Defendants used force to extract Plaintiff from his SHU cell and transported Plaintiff to the holding cell. Dkt. No. 64-2 at 55:16-22. During the extraction, Plaintiff attempted to spit on officers. Dkt. No. 64-7 at ¶ 31; Dkt. No. 73 at ¶ 31. As a result,

---

[4] A DOCCS "Mental Health Referral" dated December 1, 2018 states that Plaintiff was "not responding to staff direction," had "poor personal hygiene," was "having auditory hallucinations" and that "[Plaintiff] was on meds in past (Buspar & Haldol per [Plaintiff]) [and] wants them restarted." Dkt. No. 15-2 at 83. An earlier "Mental Health Referral" dated November 25, 2018, indicates that Plaintiff was "hearing voices" and "appear[ed] very fearful or nervous for no apparent reason." Dkt. No. 15-2 at 85.

3

Defendant West called Defendant Rogers and obtained permission to place a spit net on Plaintiff.[5] Dkt. No. 64-7 at ¶¶ 32-35.  While in the holding cell, Defendants Roberts, Carr, and Natali forcibly restrained Plaintiff again, before he was ultimately transferred to a nearby hospital for evaluation and treatment.  Dkt. No. 64-6 at 9-10.  Plaintiff asserts that Defendants' use of force in both the SHU cell and the holding cell was excessive.  *See, e.g.,* Dkt. No. 15 at 3; Dkt. No. 15-2 at 108.  Defendants dispute Plaintiff's narrative of the events in question, as well as Plaintiff's characterization of the use of force as excessive.  *See, e.g.,* Dkt. No. 64-8 at 3.

It is undisputed that Defendant Rogers was not physically present when Defendants West, Carr, Slate, Roberts, Kiechle, Hendrick, and Natali extracted Plaintiff from the SHU cell, nor was Defendant Rogers notified in advance that Plaintiff was going to be extracted because the extraction "was an emergent situation."  Dkt. No. 64-4 at ¶ 22.  Additionally, there is no evidence in the record that establishes that Defendant Rogers was physically present in the holding cell at any point during the events in question.  The record evidence establishes that Defendant Rogers' only involvement was authorizing the use of a spit net on Plaintiff via phone.  Dkt. No. 64-7 at ¶¶ 35, 37; Dkt. No. 73 at ¶¶ 35, 37.

Plaintiff brought Eighth Amendment claims against all eight Defendants, seeking "money damages" and "justice" under Section 1983 for these alleged violations of his Eighth Amendment constitutional rights.  Dkt. No. 15 at 3, 5.

## III.   STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party

---

[5] A spit net "is essentially a mask that is placed over an incarcerated individual's head and mouth when the individual is threatening to spit or actively spitting at staff."  Dkt. No. 64-4 at ¶ 6.

4

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002).  A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *accord R.B. Ventures, Ltd. V. Shane*, 112 F.3d 54, 57 (2d Cir. 1997).  The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

5

## IV. DISCUSSION

Defendant Rogers argues that Plaintiff's Section 1983 claims against him should be dismissed because he was not personally involved in the alleged constitutional violations against Plaintiff and because Plaintiff has failed to establish Eighth Amendment excessive force and failure to intervene claims against him.[6]

### A. Section 1983 Liability

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability [under § 1983]. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

An Eighth Amendment excessive force claim requires that a plaintiff prove: (1) subjectively, that in applying force, the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) ("the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort

---

[6] In light of the Court's decision below, the Court does not reach Defendant's argument concerning qualified immunity. *See generally* Dkt. No. 64-8 at 12-13.

6

to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" (internal quotation marks omitted)).

An Eighth Amendment failure to intervene claim requires that a plaintiff first establish an underlying constitutional violation, such as excessive force. To then succeed on a derivative failure to intervene claim, a plaintiff must further prove that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Sanders v. Torres*, No. 9:19-CV-697 (GTS/CFH), 2021 WL 799263, at *13 (N.D.N.Y. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 797014 (N.D.N.Y. Mar. 2, 2021) (internal quotations and citations omitted); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

### B. As a Matter of Law, Plaintiff Has Failed to Establish That Defendant Violated His Constitutional Rights

Plaintiff submitted with his *pro se* Complaint a DOCCS report identifying twelve DOCCS employees who were involved with the events of December 2, 2018, including two supervisors: Defendant West and Defendant Rogers. Dkt. No. 15-2 at 18-20. Plaintiff stated in his deposition that his claims against Defendant West were because "he was telling the other officers what they should do" and his claims against Defendants Rogers were "[t]he same as towards" Defendant West. Dkt. No. 64-2 at 86:17-21, 88:10-12.

Defendant Rogers primarily argues that he had no personal involvement in the use of allegedly excessive force during Plaintiff's SHU cell extraction because he was (i) not present at the SHU cell, and (ii) unaware in advance that the SHU cell extraction would occur. *See* Dkt. No.

7

64-8 at 7. The Court agrees. As Plaintiff acknowledges, "[t]he record is devoid of any such evidence" that Defendant Rogers was present in the SHU cell or the holding cell, used force on Plaintiff in either cell, or had any involvement in the events in question beyond authorizing the use of a spit net on Plaintiff via phone. Dkt. No. 73-1 at ¶ 9; *see also* Dkt. No. 64-7; Dkt. No. 73. Defendant Rogers cannot be held liable merely because he was the supervisor on duty at the time of the events in question if he lacked personal involvement in those events. *See e.g., Sanders*, 2021 WL 799263, at *13.

With respect to the spit net, is undisputed that (i) Plaintiff was spitting; (ii) Defendant West informed Defendant Rogers that Plaintiff was spitting; (iii) Defendant Rogers authorized the use of a spit net for the health and safety of the correction officers in Plaintiff's vicinity. *See* Dkt. No. 64-4 at ¶¶ 6, 23. Under these circumstances, the Court is satisfied that Defendant Rogers' authorization of a spit net does not constitute excessive force. *See, e.g., Johnson v. Woods*, No. 07-CV-1018 (DNH/DRH), 2010 WL 2039164 at *15 (N.D.N.Y. Mar. 2, 2010) (use of a spit net not excessive force when defendant was spitting); *accord Barnes v. Fischer*, No. 13-CV-164 (GLS/DJS), 2018 WL 5660414 at *10 (N.D.N.Y. Mar. 16, 2018).

As to Plaintiff's failure to intervene claims, Defendant Rogers argues that: (i) he had no realistic opportunity to intervene; and (ii) no reasonable person in his position would have known Plaintiff's constitutional rights were being violated. Dkt. No. 64-8 at 10-11.[7] The Court agrees. Based on the evidence in the record, it is undisputed that Defendant Rogers was not present during the use of force incidents and thus he had no realistic opportunity to intervene. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y 2010) (granting summary judgment on an Eighth

---

[7] Because the Complaint does not raise facts to suggest an Eight Amendment deliberate indifference claim, the Court does not reach Defendant Rogers' argument concerning deliberate indifference. *See generally* Dkt. No. 13; Dkt. No. 64-8 at 10.

Amendment failure to intervene claim and finding that "a defendant who is not in the vicinity of the alleged constitutional violation . . . cannot be held liable because he lacked reasonable opportunity to intervene").

For these reasons, the Court grants the Motion as to Plaintiff's Eighth Amendment claims against Defendant Rogers for excessive force in either cell, as well as for failure to intervene in either cell.

## V.     CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant Rogers' Motion, Dkt. No. 64, is **GRANTED** and Plaintiff's Eighth Amendment claims against Defendant Rogers for excessive force and for failure to intervene are **DISMISSED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 16, 2024
  Albany, New York

Anne M. Nardacci
U.S. District Judge

9